Filed 5/10/17 Certified for Publication 5/22/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SOUTHERN INSURANCE COMPANY,<br><br>Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD, EJ DISTRIBUTION CORPORATION et al.,<br><br>Respondents. | B278412<br><br>(WCAB No. ADJ6865421) |

PROCEEDINGS to review a decision of the Workers' Compensation Appeals Board. Annulled and remanded with directions.

Stockwell, Harris, Woolverton & Muehl, Alexander G. Abdoulin and George Woolverton for Petitioner.

Margaret W. Hosel and Anne Schmitz for Respondent Workers' Compensation Appeals Board.

Department of Industrial Relations, Christopher Jagard, Steven A. McGinty, and Sarosh Qaiser for Respondent Christine Baker, Director of Industrial Relations as Administrator of the Uninsured Employers Benefits Trust Fund.

Glauber Berenson and Timothy Chan for Respondent David Berrios-Segovia.

A workers' compensation insurance policy was issued based on the express representation that the covered employer's employees did not travel out of state. After an employee was injured out of state, the insurer notified the employer that it was rescinding the policy because of the employer's misrepresentation and returned the premium. The issue of insurance coverage went to mandatory arbitration wherein the arbitrator concluded that, as a matter of law, the insurer could not rescind the policy and that the policy was in effect. The Workers' Compensation Appeals Board (appeals board) affirmed the arbitrator's decision.

Contrary to the arbitrator's ruling, a workers' compensation insurance policy may be rescinded. (Ins. Code, § 650.) A rescission is enforced by a civil action for relief based on rescission (Civ. Code, § 1692) or by asserting rescission as a defense. (*Resure, Inc. v. Superior Court* (1996) 42 Cal.App.4th 156, 165-166 (*Resure*).)[1] Because the arbitrator and the appeals board did not address and determine whether rescission was a meritorious defense to the employee's claim, we annul the appeals board's decision and remand the case with directions to hear and determine whether the insurer was entitled to rescind, and did rescind, the policy.

FACTUAL BACKGROUND

**Insurance procurement**

On December 23, 2008, EJ Distribution Corporation (EJ) applied for workers' compensation insurance. The application indicated EJ's business as "Concession Trucking company moves containers, no whse [*sic*], no loading and unloading, under 50 mil

_____

[1] "When a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by (a) bringing an action . . . or (b) asserting such rescission by way of defense or cross-complaint." (Civ. Code, § 1692.)

rt." The application also indicated that EJ's employees did not travel out of state. The online application prepared by EJ's insurance agent described EJ's operations as "local hauling." The online application also indicated that EJ's employees did not travel out of state and did not have a radius of travel greater than 200 miles.

Workers' compensation insurance policy number WSI0006904-01 (hereafter "the policy") was issued by Southern Insurance Company[2] for an annual period beginning on January 1, 2009.

**The subject claim**

On April 6, 2009, EJ's employee, David Berrios-Segovia (Segovia), injured his back lifting a latch to his truck while on a trip to Tennessee for his employer EJ. Segovia filed a workers' compensation claim on May 13, 2009.

On June 12, 2009, Southern's attorneys sent a letter to EJ stating that "Southern is rescinding the policy." The decision to rescind was based on material misrepresentations or the concealment of material facts by EJ in the application for the policy, specifically that its employees did not travel out of state and that its operations did not exceed a radius of travel of 200 miles. The letter noted that Segovia's claim showed those representations were not true as Segovia's injury occurred in Tennessee. The letter also claimed Southern would not have issued the policy had the true facts been known. Southern returned the premiums paid by EJ in the sum of $19,743.03.

Southern's underwriting file included a document entitled "POLICY TERMINATION / CANCELLATION /

_____

[2] The subject injury claim is administered by Markel doing business as FirstComp on behalf of Southern Insurance Company (collectively Southern).

REINSTATEMENT NOTICE" issued on June 15, 2009. The document stated:

> "_ X _ **Termination/Cancellation/Nonrenewal**
> The coverage provided by the policy number shown above is being __ __ nonrenewed or __X__ terminated/canceled, __X__ flat, __ __ pro rata, or __ __ short rate, effective 1/01/2009 12:01 a.m. standard time at the insured's mailing address for the following reason(s):  Substantial change in risk or Increase in Hazard. Flat Cancel."

In light of Southern's position that the policy was rescinded leaving EJ uninsured, the Uninsured Employers Benefits Trust Fund (UEBTF) was joined as a defendant in Segovia's workers' compensation claim.

## PROCEDURAL HISTORY

**The arbitration**

The matter was submitted to mandatory arbitration as a dispute involving insurance coverage pursuant to Labor Code section 5275, subdivision (a)(1).[3]

Southern called an underwriter as a witness who testified that Southern never insured long-haul trucking in its business division.  In addition, the underwriter testified that, had Southern known that EJ traveled outside of 200 miles or out of state, Southern would not have issued the policy.  The underwriter, however, confirmed that the policy itself, in fact all workers' compensation policies, did not contain an exclusion based on location.

Southern also called as a witness a special investigator working for the insurer who testified that EJ exceeded the

_____

[3]     "(a) Disputes involving the following issues shall be submitted for arbitration:  [¶] (1) Insurance coverage." (Lab. Code, § 5275, subd. (a)(1).)

4

200-mile radius and that operations extending beyond the 200-mile radius were not a recent development, but was something that had been done in the past. Prior to January of 2009, EJ engaged in trucking operations outside of the state of California with employees traveling to various states, such as Utah and Tennessee. The investigator testified that notes of a conversation with EJ by prior investigators confirmed that EJ engaged in out-of-state operations before the inception of the policy on January 1, 2009. However, the investigator did not have firsthand knowledge of EJ's operations at the time EJ filled out the application. The investigator stated that he did not uncover anything specific in his investigation as to EJ's operations at the time the application was submitted.

**The rulings of the arbitrator and appeals board**

The arbitrator found: There was "no retroactive rescission" of the policy; Segovia's claim for his April 6, 2009 injury was covered by the policy; and the policy was prospectively cancelled under Insurance Code section 676.8, subdivision (b)(5)[4] as of June 15, 2009, and not before. The arbitrator dismissed UEBTF as a defendant in the matter.

The arbitrator gave three reasons for his ruling that there was "no retroactive rescission" of the policy.

First, the arbitrator found that the "only remedy" for Southern upon discovering misrepresentation of out-of-state operations was cancellation of the policy pursuant to subdivision

_____

[4] "(b) After a policy is in effect, no notice of cancellation shall be effective unless it complies with the notice requirements of this section and is based upon the occurrence, after the effective date of the policy, of one or more of the following: [¶] . . .[¶] (5) Material misrepresentation by the policyholder or its agent." (Ins. Code, § 676.8, subd. (b)(5).) Further statutory references are to the Insurance Code unless indicated otherwise.

(b)(5) of section 676.8.[5]  The arbitrator ruled that there "is nothing in Insurance Code Section [676.8] that permits a workers' compensation insurer to retroactively rescind a policy that has been incepted from day one."  The arbitrator found that Southern did not comply with section 676.8 "when it unilaterally retroactively rescinded the policy to the inception date of the policy."

Second, the arbitrator ruled that there is "no mechanism in place in California for a workers' compensation insurer to unilaterally retroactively rescind a policy especially if a claim is pending under that policy."  Not entirely excluding rescission of a workers' compensation policy, the arbitrator explained the insurer cannot "retroactively rescind a workers' compensation policy without authorization from a judge in Superior Court, a workers' compensation judge, or a WCAB arbitrator."

Third, the arbitrator was concerned over leaving the injured employee without coverage by what the arbitrator termed a "unilateral, retroactive" rescission of the policy by the insurer.

As we explain below, each of the reasons given by the arbitrator is in error.

Southern petitioned for reconsideration.

_____

[5]    Section 676.8 provides in pertinent part:  "(a) This section applies only to policies of workers' compensation insurance.  [¶] (b) After a policy is in effect, no notice of cancellation shall be effective unless it complies with the notice requirements of this section and is based upon the occurrence, after the effective date of the policy, of one or more of the following:  [¶] . . . [¶] (5) Material misrepresentation by the policyholder or its agent. [¶] . . .[¶] (c) A policy shall not be canceled for the conditions specified in paragraph (1), (2), (5), or (6) of subdivision (b) except upon 10 days' written notice to the policyholder by the insurer."

The arbitrator recommended that reconsideration be denied. In addition to quoting from his opinion on the decision, the arbitrator noted that the employer's representation that its truck drivers did not travel outside of the State of California became false only upon Segovia's filing of his claim in May of 2009. The arbitrator was not convinced by the testimony of Southern's investigator that EJ had its non-owner employees drive outside the State of California at the time the policy was applied for in December 2008. Relying on section 359's entitlement to rescind the contract "'from the time the representation becomes false,'" the arbitrator found that Southern could only rescind the policy prospectively. The arbitrator stated that the record did not indicate when EJ began sending its truck drivers out of state, meaning the falsity of the policy application may not have occurred until Segovia's injury in Tennessee on April 6, 2009.

The appeals board adopted and incorporated the arbitrator's report, with the exception of the finding that Southern had waived the jurisdictional issue, and denied reconsideration.

**Petition for a writ of review**

Defendant Southern petitioned this court for a writ of review on October 20, 2016. The petition presented four questions for review:

> "1. Whether *Labor Code* [section] 5275 provides the Workers Compensation Appeals Board with Subject Matter Jurisdiction over rescission of a Workers Compensation Insurance Policy?

> "2. Whether Rescission of a Workers Compensation Insurance Policy is Permitted and if so, How is it Effectuated?

7

"3.  Do Cancellation Statutes Under *Insurance Code* [section] 676.8 Control Rescission of a Workers' Compensation Policy or Prevent Rescission of Such Policy?

"4.  Whether the Statutory Scheme or Public Policy Considerations Warrant Preclusion of Contract Rescission in Workers Compensation Claims?"

We granted the petition for a writ of review on January 10, 2017.  We requested that the parties brief issues relating to the rescission of the policy in this case.[6]

## DISCUSSION

### I.  Subject matter jurisdiction

Section 4 of article XIV of the California Constitution vests plenary power in the Legislature to create and enforce a complete system of workers' compensation.[7]  Based upon this

_____

[6]      These issues were:  "1. Can a workers' compensation insurance policy be rescinded under the authority of Insurance Code section 650?  [¶]  2. In this case, the applicant filed the claim before the insurer attempted to rescind the contract.  Insurance Code section 650 provides that the right to rescind may be exercised at any time previous to the commencement of an action on the contract.  Does this provision preclude the insurer's attempted rescission?  [¶]  3.  May the insurer assert rescission as a defense to the applicant's claim?  (Civ. Code, § 1692, subd. (b).)"

[7]      "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation . . . to compensate any or all of their workers for injury or disability, and their dependents for death incurred or sustained by the said workers in the course of their employment, irrespective of the fault of any party."  (Cal. Const., art. XIV, § 4.)

8

constitutional mandate, the Legislature enacted section 5300 of the Labor Code, which provides the appeals board with exclusive jurisdiction over actions to enforce against the employer or an insurer any liability for compensation imposed upon the employer.  (Lab. Code, § 5300, subd. (b).)  "The appeals board is vested with full power, authority and jurisdiction to try and determine finally all the matters specified in Section 5300 subject only to the review by the courts as specified in this division." (Lab. Code, § 5301.)  "The Workers' Compensation Appeals Board . . . shall exercise all judicial powers vested in it under this code." (Lab. Code, § 111.)

Given these broad powers, and the specific statutory authority providing for arbitration of coverage disputes (see fn. 3), Southern concedes that insurance coverage is within the jurisdiction of the appeals board.  Nonetheless, Southern asserts that the appeals board does not have subject matter jurisdiction over a contractual dispute between an insurer and its insured. However, where, as here, *coverage* is disputed on the ground that there is no longer a contract of insurance in existence, it is obviously necessary to rule on the defense asserted in order to determine whether there is coverage.  "There can be no doubt but that the Commission is vested by constitutional and legislative power to hear and determine every issue raised by the parties to this controversy, including the validity of the policy and the question of fraud alleged in its procurement and that the parties are not required to invoke either a court of law or equity in the determination of said questions.  [Citations.]"  (*General Acci. Fire & Life Assurance Corp. v. Industrial Acci. Com.* (1925) 196 Cal. 179, 190-191.)  Thus, while Southern is free to litigate contractual disputes with its insured in a court of law, if Southern disputes workers' compensation insurance coverage because it claims there is no contract, it must submit to the

9

jurisdiction of the appeals board on the issue of coverage even if that entails a ruling on whether the insurance contract is (or was) in effect.

## II. Rescission of a workers' compensation insurance policy

### A. *The statutory framework*

Section 676.8 is contained in chapter 11, part 1, division 1 of the Insurance Code. Chapter 11 is entitled Cancellation and Failure to Renew Certain Property Insurance. Section 676.8 is specifically limited to workers' compensation insurance and it addresses only the cancellation of a policy. It does not even inferentially address rescission.

Chapter 9 of part 1, division 1 of the Insurance Code is entitled Rescission. Chapter 9 has only two sections, one of which (section 650) applies to this case.[8] Section 650 provides that "[w]henever a right to rescind a contract of insurance is given to the insurer by any provision of this part such right may be exercised at any time previous to the commencement of an action on the contract. The rescission shall apply to all insureds under the contract, including additional insureds, unless the contract provides otherwise."

Section 650 applies to workers' compensation insurance policies. Addressing section 650, as we must, in its context and within the overall statutory scheme (*People v. Canty* (2004) 32 Cal.4th 1266, 1276) we find that there are three reasons for this.

First, there is nothing in chapter 9 or in section 650 specifically that provides that section 650 does not apply to workers' compensation insurance policies. By contrast, subdivision (a) of section 675 specifically exempts workers'

_____

[8]     The second section in the rescission chapter applies only to the rescission of an automobile liability policy. (§ 651.)

compensation insurance from the provisions of chapter 11 which deal with the cancellation of certain insurance policies.

Second, chapter 9 and section 650 do not single out workers compensation insurance for special treatment. Section 676.8, on the other hand, specifically governs the cancellation of such policies. This is indicative of the intent that the general provisions regarding rescission set forth in section 650 should govern workers' compensation insurance policies.

Third, there is no provision anywhere in the pertinent statutes that can be construed to preclude the rescission of workers' compensation insurance policies.

UEBTF claims that the right to rescind is protected by section 675[9] but that workers' compensation insurance is specifically excluded from section 675.[10] Based upon this interpretation of section 675, UEBTF contends that a workers' compensation insurance policy cannot be rescinded. The premise of this argument, however, is in error since rescission is provided for in chapter 9, not chapter 3, and section 675 makes no mention of chapter 9.

UEBTF also contends that rescission is precluded because section 676.8 does not provide for protection of the right to rescind a workers' compensation insurance policy. However,

_____

[9] "This chapter shall not be construed so as to modify or negate any of the provisions of Chapter 3 (commencing with Section 330) of Part 1 of Division 1, nor to destroy any rights or remedies therein provided." (§ 675, subd. (b).) Chapter 3 deals with concealment and recognizes the right to rescind a policy upon a showing of concealment. (§ 331.)

[10] Subdivision (a) of section 675 excludes workers' compensation insurance from the provisions of chapter 11.

11

section 676.8 deals with cancellation only and is in a chapter that governs cancellation, not rescission.

The somewhat peculiar limitation of rescission to the period prior to the filing of an action on the insurance contract in section 650, is explained by the fact that the former equitable suit for rescission, now abolished, could not be brought if there was an adequate remedy at law.  The adequate remedy at law was an action on the insurance contract.  That is, if the policy holder brought an action on the contract, the carrier could assert rescission as a defense in that action.  (*Resure, supra*, 42 Cal.App.4th at pp. 165-166.)[11]  Thus, section 650 is an echo of the

_____

[11]     "When Insurance Code section 650 was enacted, the distinction between an action on the contract at law and an action for equitable rescission was of great significance because of the artificial separation between law and equity.  Equity would not assume jurisdiction when the plaintiff had a clear remedy at law.  [Citations.]  It followed that once an action to enforce a contract was commenced at law, the party holding a right to rescind was expected to raise that as a defense rather than bring a new action in equity.  [Citation.]  [¶]  The rule that equitable rescission would not be permitted where there was an adequate remedy at law, taken together with the rule that an applicant's fraud could be raised as a defense to an action on the policy, clarifies what is meant by Insurance Code section 650's limitation on the right of an insurer to rescind the policy to the time 'previous to the commencement of an action on the contract.'  The Legislature intended that the insurer be precluded from rescinding once the insured had proceeded with an action to enforce the insurance contract at law. . . .  The point was merely to guarantee that resort to equity was not needlessly made where the insurer had ample opportunity to raise the same issues in defense of the action on the policy.  As we have indicated in our earlier discussion, California law affords that opportunity to insurers where the insured fires the first shot."  (*Resure, supra*, 42 Cal.App.4th at p. 166.)

past reality that an equitable suit for rescission could not be brought in the face of a pending action at law. As *Resure* explains, section 650 does not affect the current state of the law which is that rescission can always be asserted as a defense to the action on the contract. (See fn. 11.)

UEBTF contends that once a workers' compensation claim has been filed, section 650 precludes rescission. However, the filing of a workers' compensation claim is not the equivalent of an action on the contract. The function that an "action on the contract" serves in section 650 is a legal remedy that precludes the filing of an equitable suit for rescission. The action on the contract also serves as an appropriate vehicle for the assertion of rescission as a defense.

A workers compensation claim is not the equivalent of a remedy at law. For one, a workers' compensation claim is not filed, pursued or adjudicated in a law court making it different from a legal remedy.

We note that the arbitrator appears to have been unfavorably impressed by the fact that Southern's rescission was "unilateral," though rescission is routinely a unilateral act. After the equitable action to have a rescission adjudged was abolished in 1961, "the statutes now deal solely with *unilateral rescission* by notice and offer to restore the consideration. [Citations.]" (1 Witkin, Summary of Cal. Law (10th ed. 2005), Contracts, § 930, pp. 1026-1027, original italics, citing inter alia *Runyan v. Pacific Air Indus.* (1970) 2 Cal.3d 304, 312.) There is a difference between effecting a rescission and enforcing a rescission by a civil action. A party effecting a rescission necessarily does so unilaterally. We turn to this next.

### B. Rescission as a defense

A rescission is effected under Civil Code section 1691 by giving notice of rescission and restoring, or offering to restore, everything of value received under the contract.[12]

Once a contract has been rescinded in accordance with the statutory procedure under Civil Code section 1691, any party to the contract may seek legal or equitable relief based upon the rescission. (*Runyan v. Pac. Air Indus.* (1970) 2 Cal.3d 304, 313-314 & *Paularena v. Superior Court of San Diego County* (1965) 231 Cal.App.2d 906, 913 both citing to 3 Cal. Law Revision Com. Rep. (1961) p. D-7.) Civil Code section 1692 sets forth the remedies available in an action to enforce a rescission.[13]

The arbitrator seemed to conflate the effectuation of a rescission under Civil Code section 1691 with an action for relief based on the rescission. In this case, Southern effected a rescission but did not file an action for relief based on the rescission, as it might have, for declaratory relief, to name one

_____

[12] "Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind: [¶] (a) Give notice of rescission to the party as to whom he rescinds; and [¶] (b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so." (Civ. Code, § 1691.)

[13] "A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery." (Civ. Code, § 1692.)

14

example. That is, the effectuation of a rescission under Civil Code section 1691 is not the equivalent of a judgment in a civil action providing for relief based on a rescission.

Southern also misses the distinction between the effectuation of a rescission under Civil Code section 1691 and the enforcement of a rescission when it states that once a party has done as set forth in section 1691, "the rescission is complete."

The thought that performing the acts set forth in Civil Code section 1691 effectively discharged Southern's obligations under the contract is incorrect. A judgment finding that Southern's rescission was effective following an action filed to enforce the rescission under Civil Code section 1692, on the other hand, would be the discharge that Southern seeks. The same finding could be entered if Southern asserts rescission as a defense to the workers' compensation claim. Of course, such a finding would not be entered until the facts were tried and determined in the workers' compensation hearing. It should be unnecessary to point out that there must be *grounds* for the rescission, fraud being one of them (Civ. Code, § 1689, subd. (b)(1)), and that Southern cannot unilaterally decide, with binding effect on all the world, whether any of the grounds set forth in Civil Code section 1689 apply to this case. The point is that it is possible, as section 1692 itself recognizes, that notwithstanding Southern's assertion that it rescinded the contract, the rescission was not effective.[14]

The appeals board generally agrees that a workers' compensation insurance policy can be rescinded under the

_____

[14]    "If in an action or proceeding a party seeks relief based upon rescission *and the court determines that the contract has not been rescinded*, the court may grant any party to the action any other relief to which he may be entitled under the circumstances." (Civ. Code, § 1692, italics added.)

15

authority of section 650. However, the appeals board contends, and rightly so, that rescission should not be used for the improper purpose of obtaining impermissible modifications to a workers' compensation insurance policy.

The answer to the appeals board's concern is that if rescission is asserted as a defense to the claim in a workers' compensation proceeding, the appeals board itself can ensure that the rescission is not used as a subterfuge to evade the laws governing workers' compensation insurance.

There is also the concern over the injured worker who has filed a workers' compensation claim but is faced with an insurer who has acted to rescind the policy. The answer here is that the insurer cannot be certain that the rescission will be enforced and that the insurer is therefore well advised to avoid drastic decisions about coverage until the validity of the rescission has been adjudged.

### C. Rescission in this case

The arbitrator explicitly ruled that Southern could not rescind the policy. Putting the same point another way, the arbitrator found that Southern's attempted rescission was legally ineffective. Given this ruling, we assume the arbitrator gave little or no consideration to the facts with which Southern sought to justify its rescission of the policy or to the facts that pointed to a contrary conclusion.

Though in the report on the petition for reconsideration the arbitrator addressed some of the facts pertinent to rescission, this analysis of the facts did not inform the decision that was made, that as a matter of law, Southern could not rescind the policy. It appears that contrary evidence, that Southern did effectively, and prospectively, cancel the policy as of June 15, 2009, based on EJ's misrepresentation, was given little attention.

The gist of the factual views set forth in the report on the petition for reconsideration was that there was no evidence that, *as of the time that EJ entered into the policy*, EJ was engaged in transportation out of state and beyond 200 miles.

There was, however, evidence from which it can be reasonably inferred that EJ knew when it entered into the policy that representations as to the nature of its transportation business were false. Southern's special investigator testified that a prior investigator confirmed that EJ engaged in out-of-state operations prior to the inception of the policy on January 1, 2009. Although Southern's special investigator did not have personal knowledge of EJ's operations at the time EJ completed its insurance application, there were business records referenced by the investigator that tended to show that EJ conducted out-of-state operations possibly during the insurance application process.

Regardless, the report on the petition for reconsideration stated that "[t]here is no doubt that at some point the employer in this case concealed the fact that its employee truck drivers drive out of the State of California." It was for this reason that the conclusion was reached that the policy was cancelled prospectively as of June 15, 2009. Although the appeals board contends that there were no material misrepresentations in this case, this is at odds with the arbitrator's view.

Given there were misrepresentations, the issue yet to be decided is whether EJ concealed material facts from Southern when it negotiated and entered into the policy. There is also no decision of record on whether the misrepresentation was material since the insurer must prove that the insured concealed or misrepresented a material fact on the insurance application. (*LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 156 Cal.App.4th 1259, 1266.) "Materiality is to be determined not by

17

the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries."  (§ 334.)

The conclusion is unavoidable that the issue whether Southern's rescission was legally effective remains factually open and unresolved.

## DISPOSITION

The decision of the appeals board affirming the findings and award of the arbitrator is annulled and the matter is remanded to the appeals board for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
CHAVEZ

We concur:


_____, J.
HOFFSTADT


_____, J.*
GOODMAN

_____

* Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18

Filed 5/22/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SOUTHERN INSURANCE COMPANY, | B278412 |
| Petitioner, | (WCAB No. ADJ6865421) |
| v. | ORDER FOR PUBLICATION |
| WORKERS' COMPENSATION APPEALS BOARD, EJ DISTRIBUTION CORPORATION et al., | |
| Respondents. | |

THE COURT:*

      The opinion in the above entitled matter filed on May 10, 2017, was not certified for publication.

      For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

---

\* CHAVEZ, Acting P. J., HOFFSTADT, J., GOODMAN, J.†

†Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.